# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

DEREK KITCHEN, individually;
MOUDI SBEITY, individually;
KAREN ARCHER, individually;
KATE CALL, individually;
LAURIE WOOD, individually; and
KODY PARTRIDGE, individually,

        Plaintiffs - Appellees,

v.

GARY R. HERBERT, in his official
capacity as Governor of Utah, and
SEAN D. REYES, in his official
capacity as Attorney General of Utah,

        Defendants - Appellants,

and

SHERRIE SWENSEN, in her official
capacity as Clerk of Salt Lake County.

        Defendant.

**No. 13-4178**

---

## MOTION TO INTERVENE
## AND PARTICIPATE IN ORAL ARGUMENT

---

Roberta A. Kaplan, Esq.
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000
rkaplan@paulweiss.com

Alan B. Morrison, Esq.
GEORGE WASHINGTON
UNIVERSITY LAW SCHOOL
2000 H Street, N.W.
Washington, DC 200252
(202) 994-7120
abmorrison@law.gwu.edu

Attorneys for Proposed Intervenors

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................. 2

The Proposed Intervenor Couples Should Be Permitted to Intervene............ 4

1.    Delay/Prejudice ................................................................... 5

2.    Input of the Proposed Intervenor Couples........................... 6

3.    Representation ..................................................................... 9

4.    Availability of Other Forum............................................... 10

Conclusion ................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Antilles Cement Corp.* v. *Acevedo Vila*,
    408 F.3d 41 (1st Cir. 2005)............................................................4

*Elliott Indus. Ltd. P'ship* v. *BP Am. Prod. Co.*,
    407 F.3d 1091 (10th Cir. 2005) ...................................................4

*Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...................................................................3

*Harris* v. *Owens*,
    264 F.3d 1282 (10th Cir. 2001) ...................................................9

*Hutchinson* v. *Pfeil*,
    211 F.3d 515 (10th Cir. 2000) ...............................................1, 10

*Kobach* v. *U.S. Election Assistance Comm'n*,
    13-CV-4095-EFM-DJW, 2013 WL 6511874
    (D. Kan. Dec. 12, 2013)...............................................................5

*Lower Ark. Valley Water Conservancy Dist.* v. *United States*,
    252 F.R.D. 687 (D. Colo. 2008) .................................... 5, 8, 9, 10

*Marino* v. *Ortiz*,
    484 U.S. 301 (1988) .................................................................10

*Minnesota Lawyers Mut. Ins., Co.* v. *Vedisco*,
    No. 10-CV-01008-REB-MEH, 2010 WL 3239217
    (D. Colo. Aug. 13, 2010)...........................................................10

*Penobscot Nation* v. *Mills*,
    1:12-CV-254-GZS, 2013 WL 3098042
    (D. Me. June 18, 2013).............................................................8, 9

*Romer* v. *Evans*,
    517 U.S. 620 (1996) ........................................................... 3, 6, 7

*Tyler* v. *City of Manhattan*,
    118 F.3d 1400 (10th Cir. 1997) ...................................................................9

*United States* v. *City of Los Angeles, Cal.*,
    288 F.3d 391 (9th Cir. 2002) ...................................................................10

*United States* v. *Windsor*,
    133 S. Ct. 2675 (2013) .......................................................... 4, 6, 7, 11

*Utah Ass'n of Cntys.* v. *Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ...................................................................4

*Windsor* v. *United States*,
    699 F.3d 169 (2d Cir. 2012) ...................................................................11

*Windsor* v. *United States*,
    833 F. Supp. 2d 394 (S.D.N.Y. 2012) ...................................................................11

*Wyo. Farm Bureau Fed'n* v. *Babbitt*,
    199 F.3d 1224 (10th Cir. 2000) ...................................................................9

## Statutes

Utah Const. art. I, § 29, cl. 2 ................................................................ passim

Utah Code § 30-1-4.1(1)(b) ................................................................ passim

Utah Code § 49-11-102(19) ...................................................................7

Utah Code § 49-11-609(3)(a) ...................................................................7

Utah Code § 49-11-609(4)(a) ...................................................................7

Utah Code § 49-12-402(3)(b)-(e) ...................................................................7

Utah Code § 49-16-504(1) ...................................................................7

Utah Code § 57-1-5(1)(a)(i) ...................................................................7

Utah Code § 59-10-503(1) ...................................................................7

Utah Code § 75-1-201(21) ...................................................................7

Utah Code § 75-2-102 ...................................................................7

Utah Code § 75-2-202(1) ...........................................................................7

Utah Code § 75-2-402 ...............................................................................7

Utah Code § 75-2-403 ...............................................................................7

Utah Code § 75-2a-108(1) .........................................................................7

Utah Code § 78B-6-102(4) .........................................................................7

Utah Code § 78B-6-103(11) .......................................................................7

Utah Code § 78B-6-117(3) .........................................................................7

**Other Authorities**

10th Cir. R. 27.3(C) ..................................................................................1

Dan Carden, *House Divorces Second Sentence from Marriage
    Amendment*, The Times of Nw. Ind. (Jan. 27, 2014) ...............................8

Fed. R. Civ. P. 24 ..................................................................................4, 5

Press Release, Attorney General Explains Opposition to
    Proposed Utah Marriage Amendment (Aug. 6, 2004) ...........................7, 8

This motion is being filed by three gay and lesbian couples who live in Utah (the "Proposed Intervenor Couples"), and who respectfully move this Court for leave to intervene and participate in oral argument in the above-captioned appeal. Pursuant to 10th Cir. R. 27.3(C), the Proposed Intervenor Couples have sought, but not received, consent from the parties to the relief sought by this motion.

The Proposed Intervenor Couples understand that intervention at this stage, while authorized, is relatively rare. *Hutchinson* v. *Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000). However, they seek intervention to address significant constitutional issues with respect to Section 2 of Amendment 3 to the Utah Constitution and Section 30-1-4.1(1)(b) of the Utah Code that were not addressed below.

Although the district court properly held that the entirety of Amendment 3 and Section 30-1-4.1 were unconstitutional, neither Judge Shelby's decision nor the briefing below addressed other prohibitions in Utah's constitution and statutes which blatantly discriminate against gay and lesbian couples by denying legal recognition *in any form whatsoever* to gay couples. These provisions expressly bar the provision of any legal rights, responsibilities, or protections to the members of any gay or lesbian couple (including the Proposed Intervenor Couples) at any time, in any place, or of

1

any scope.  The Proposed Intervenor Couples therefore seek to intervene in order to demonstrate that these provisions of Utah's laws constitute independent, grievous violations of the Fourteenth Amendment's guarantee of equal protection of the law.

## Preliminary Statement

Each of the Proposed Intervenor Couples is in a committed, long-term relationship, although only two of the couples were able to marry in the brief interval between December 20, 2013 and January 6, 2014, when such marriages were authorized in Utah.  Douglas Wortham and Nicholas Nero are an unmarried gay couple who have been in a relationship for thirty years. (Wortham Decl. ¶¶ 3-4.)  Lynn Beltran and Claudia O'Grady are a lesbian couple who have been in a relationship for fourteen years and were married on December 23, 2013 in Salt Lake County.  (Beltran Decl. ¶¶ 3, 6.) Stanford Rovig and Charles Fluke are a gay couple who have been in a relationship for approximately eight years and were married on December 31, 2013 in Salt Lake County.  (Rovig Decl. ¶¶ 3, 5.)

Utah Code Section 30-1-4.1(1)(b) states that:  "Except for the relationship of marriage between a man and a woman recognized pursuant to this chapter, this state will *not recognize, enforce, or give legal effect to any law creating any legal status, rights, benefits, or duties* that are substantially

2

equivalent to those provided under Utah law to a man and a woman because they are married" (emphasis added). Section 2 of Amendment 3 of the Utah Constitution similarly provides as follows: "No other domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent effect." [1]

While the proceedings below did not address these specific provisions, as with any constitutional challenge to a statutory scheme, these Utah statutory and constitutional provisions must be examined by the Court as a whole, not merely as isolated sections. *See Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Significantly, here, the State of Utah went far beyond simply prohibiting marriages between gay people. While that alone is unconstitutional, preventing gay people from ever obtaining any rights as committed couples—at any time and in any circumstances—is a particularly egregious violation and should be fully presented to this Court. *See Romer* v. *Evans*, 517 U.S. 620, 632 (1996) (holding unconstitutional an amendment to the Colorado constitution that "has the peculiar property of imposing a broad and undifferentiated disability on a single named group [of gays and

---

[1] Referred to as Amendment 3 during the 2004 election, the constitutional prohibitions of gay and lesbian marriage and of the extension of any benefits to gay and lesbian couples are incorporated into the Utah Constitution at Article I, Section 29.

lesbians]"); *United States* v. *Windsor*, 133 S.Ct. 2675, 2693 (2013) (holding unconstitutional a provision of the Defense of Marriage Act because "[t]he Constitution's guarantee of equality must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group" (internal citation omitted)).

**The Proposed Intervenor Couples Should Be Permitted to Intervene**

Intervention is appropriate here, particularly in light of the Tenth Circuit's generally permissive standard for intervention. *Utah Ass'n of Cntys.* v. *Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (the Tenth "circuit follows a somewhat liberal line in allowing intervention."); *see also Antilles Cement Corp.* v. *Acevedo Vila*, 408 F.3d 41, 45 (1st Cir. 2005) ("A federal court of appeals has broad discretion to grant or deny intervention at the appellate level.").

When assessing whether intervention at the appellate level is proper, the courts appropriately look to Fed. R. Civ. P. 24. *See Elliott Indus. Ltd. P'ship* v. *BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005). Under the permissive intervention standard of Fed. R. Civ. P. 24(b)(1)(B), a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Here, the "common question of law" is obvious—namely, whether the provisions of

4

Utah law at issue unconstitutionally discriminate against gay and lesbian couples.

When deciding a motion for permissive intervention under Fed. R. Civ. P. 24(b), courts also consider the following factors: "(1) whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights; (2) whether the would-be intervenor's input adds value to the existing litigation; (3) whether the petitioner's interests are adequately represented by the existing parties; and (4) the availability of an adequate remedy in another action." *Lower Ark. Valley Water Conservancy Dist.* v. *United States*, 252 F.R.D. 687, 690-91 (D. Colo. 2008). As discussed below, each of these factors weighs heavily in favor of intervention by the Proposed Intervenor Couples here.

**<u>Delay/Prejudice</u>.** First, there can be no dispute that the participation of the Proposed Intervenor Couples will not cause any undue delay that would in any way impair the rights of the parties to this appeal. More specifically, the Proposed Intervenor Couples will adhere to the schedule established by the Court and file their brief on the same day as appellees, February 25, 2014.

While appellants may have to address additional arguments if the instant motion is granted, that is not considered to be prejudicial. *See, e.g.*, *Kobach* v. *U.S. Election Assistance Comm'n*, 13-CV-4095-EFM-DJW, 2013

5

WL 6511874 (D. Kan. Dec. 12, 2013). Indeed, a discussion of Section 2 of

Amendment 3 and Section 30-1-4.1(1)(b) will only assist the Court, and

could not possibly prejudice any party.

**Input of the Proposed Intervenor Couples.** There also can be no question

that briefing of the issues raised by the Proposed Intervenor Couples will

address significant and glaring constitutional problems with key sections of

the laws at issue that have previously not been discussed. Specifically, their

brief will demonstrate that Section 2 of Amendment 3 and Section 30-1-

4.1(1)(b) unconstitutionally deny equal dignity to gay and lesbian

relationships, as prohibited by the Supreme Court in *United States* v.

*Windsor*, 133 S. Ct. 2675 (2013), and unconstitutionally discriminate against

gay people, as prohibited by the Supreme Court in *Romer* v. *Evans*, 517 U.S.

620 (1996).

In *Windsor*, the Supreme Court explicitly recognized the "equal

dignity" of the "intimate relationship between two people, a relationship

deemed by the State worthy of dignity in the community. . . ." *Id.* at 2692-

93. The Supreme Court reached this conclusion in the process of

invalidating the "restrictions and disabilities" placed upon gay and lesbian

couples by the Defense of Marriage Act). The Utah laws at issue here

burden gay and lesbian couples living in Utah in a directly analogous way

6

by, for example, interfering with their rights to file taxes jointly,[2] to receive

benefits under the state public pension system,[3] to adopt or serve as legal

guardian of a partner's child,[4] to receive inheritance protections,[5] and to

make medical decisions for a partner.[6]  In light of *Windsor*, such restrictions

and disabilities imposed on gay and lesbian couples cannot stand.

 The Utah laws at issue here also clearly run afoul of the Supreme

Court's decision in *Romer* v. *Evans*.  517 U.S. 620 (1996).  *Romer* prohibits

as unconstitutional statutes intended to prevent all forms of legal protection

for gay people.  In parallel to the law at issue in *Romer*, the Utah laws here

"withdraw[] from homosexuals, but no others, specific legal protection. . . ."

*Id*. at 627.  Further, the constitutional provision held unconstitutional in

*Romer* barred any future protections that could ever be achieved by gay

people, similar to the Utah laws at issue here.  *Id.* at 633.  Indeed, the

breadth of the laws at issue here was a matter of concern even to some in

Utah who wanted to ban marriages between gay couples.  *See* Press Release,

---

[2] *See, e.g.*, Utah Code § 59-10-503(1).
[3] *See, e.g.*, Utah Code § 49-11-102(19); Utah Code § 49-11-609(3)(a); Utah Code § 49-12-402(3)(b)–(e); Utah Code § 49-16-504(1).
[4] *See, e.g.*, Utah Code § 78B-6-102(4); Utah Code § 78B-6-103(11); Utah Code § 78B-6-117(3).
[5] *See, e.g.*, Utah Code § 75-1-201(21); Utah Code § 75-2-102; Utah Code § 75-2-202(1); Utah Code § 75-2-402; Utah Code § 75-2-403; Utah Code § 49-11-609(4)(a); Utah Code § 57-1-5(1)(a)(i).
[6] *See, e.g.*, Utah Code § 75-2a-108(1).

7

Attorney General Explains Opposition to Proposed Utah Marriage
Amendment (Aug. 6, 2004) (*available at* https://web.archive.org/web/
20040912045631/http://attorneygeneral.utah.gov/PrRel/praug062004.htm)
("This amendment goes too far.  It could forever deny to a group of citizens
the right to approach its legislature to seek benefits and protections.  That is
bad law and should be rejected by the fair-minded citizens of the state of
Utah.").[7]

Given the above, the Proposed Intervenor Couples' "input would
make a significant and useful contribution to the development of the legal
issues in this case because it would allow [the Court] to decide the merits of
Plaintiff's . . . claims for relief on more complete briefing."  *Lower Ark.
Valley*, 252 F.R.D. at 691.  *See also Penobscot Nation* v. *Mills*, 1:12-CV-
254-GZS, 2013 WL 3098042, at *5 (D. Me. June 18, 2013) ("[T]he addition
of [Intervenors] will add value to this litigation.  Where 'the applicant's

---

[7] It is worth noting that the Indiana House of Representatives recently
determined that a similar provision in a proposed Indiana constitutional
amendment "went too far," permanently jeopardizing the access of gay
people to benefits and protections.  Thus, on January 27, 2014, the Indiana
House voted to strike the Indiana amendment's second sentence, which had
read:  "A legal status identical or substantially similar to that of marriage for
unmarried individuals shall not be valid or recognized."  *See* Dan Carden,
*House Divorces Second Sentence from Marriage Amendment*, The Times of
Nw. Ind. (Jan. 27, 2014), http://www.nwitimes.com/news/local/govt-and-
politics/house-divorces-second-sentence-from-marriage-
amendment/article_681f205a-bffa-5b12-9e7e-9cf658703e9e.html.

input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues,' permissive intervention is favored." (internal citation omitted)).

In addition, out of an excess of caution, the Proposed Intervenor Couples also seek to intervene because, under existing Tenth Circuit law, the raising of new issues is discouraged in briefs *amicus curiae*. *See Wyo. Farm Bureau Fed'n* v. *Babbitt*, 199 F.3d 1224, 1230 n.2 (10th Cir. 2000); *Harris* v. *Owens*, 264 F.3d 1282, 1288 n.3 (10th Cir. 2001) ("[A]bsent 'exceptional circumstances,' we do not ordinarily consider issues raised only in an amicus brief."); *Tyler* v. *City of Manhattan*, 118 F.3d 1400, 1403–04 (10th Cir. 1997).  Although the Proposed Intervenor Couples do not believe that this principle applies to the arguments they are presenting, they are filing this motion to ensure that these arguments are heard and considered by this Court.

**<u>Representation</u>.**  The Proposed Intervenor Couples are not criticizing the strategy of counsel for appellees, but the Proposed Intervenor Couples offer unique perspectives and arguments, which were not presented below.  *See Lower Ark. Valley*, 252 F.R.D. at 692 ("divergence of opinion" between plaintiff and intervenor in contract interpretation justified permissive

intervention); *see also United States* v. *City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002).

**Availability of Other Forum.**  Finally, there is clearly no other action in which the Proposed Intervenor Couples can present these issues.  Further, if the Proposed Intervenor Couples were to file an original action, it would likely be stayed pending the final disposition of this case and otherwise would be a duplicative waste of judicial time and resources.  *See, e.g.*, *Minn. Lawyers Mut. Ins., Co.* v. *Vedisco*, 10-CV-01008-REB-MEH, 2010 WL 3239217, at *5 (D. Colo. Aug. 13, 2010).

*     *     *

Although this Court in *Hutchinson* v. *Pfeil* stated that intervention in an appellate court was only permitted in an "exceptional case," this is clearly such a case.  211 F.3d 515, 519 (10th Cir. 2000).  Here, the Proposed Intervenor Couples meet all the requirements to permissively intervene, all discretionary factors weigh heavily in favor of intervention, and there is no doubt that the Proposed Intervenor Couples can provide the Court with a valuable and unique perspective and argument.  Further, in accordance with Supreme Court precedent, "when the nonparty has an interest that is affected by the trial court's judgment . . . the better practice is for such a nonparty to seek intervention for purposes of appeal."  *Marino* v. *Ortiz*, 484 U.S. 301,

10

304 (1988). In addition, in a case of this significance and importance, which has the potential to shape the trajectory of the quest of gay people for full civil equality, having greater participation by affected parties and greater airing of the issues can only benefit this Court by providing the widest range of arguments and perspectives available.

The Proposed Intervenor Couples are represented on a *pro bono* basis by Roberta Kaplan and the law firm, Paul, Weiss, Rifkind, Wharton & Garrison LLP, who represented Edith Windsor in *United States* v. *Windsor*. *United States* v. *Windsor*, 133 S. Ct. 2675 (2013); *Windsor* v. *United States*, 699 F.3d 169 (2d Cir. 2012); *Windsor* v. *United States*, 833 F. Supp. 2d 394 (S.D.N.Y. 2012).

The Proposed Intervenor Couples request that Roberta Kaplan, the lawyer who filed the *Windsor* case in the Southern District of New York and argued that case before the United States Court of Appeal for the Second Circuit and the United States Supreme Court, participate in oral argument on behalf of the Proposed Intervenor Couples. If this Court denies the Proposed Intervenor Couples' request for permissive intervention, the Proposed Intervenor Couples intend to file their proposed intervenor brief as a brief *amicus curiae*, to which the parties have consented, and to petition the Court for leave to participate in oral argument as *amicus curiae*.

## Conclusion

For all the foregoing reasons, the Court should grant the Proposed

Intervenors' motion to intervene and participate in oral argument on behalf

of the Proposed Intervenor Couples.

Dated: January 31, 2014

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

/s/ Roberta A. Kaplan

Roberta A. Kaplan, Esq.
Jaren Janghorbani, Esq.
Joshua D. Kaye, Esq.
Jacob H. Hupart, Esq.
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
rkaplan@paulweiss.com

Alan B. Morrison, Esq.
George Washington University Law School
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu

## <u>ECF CERTIFICATIONS</u>

Pursuant to Section II(I) of the Court's CM/ECF User's Manual, the undersigned certifies that:

1. all required privacy redactions have been made;

2. if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3. the document filed via ECF was scanned for viruses with the most recent version of Microsoft Security Essentials v. 2.1.111.6.0, and, according to the program, is free of viruses.

/s/ Roberta A. Kaplan

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st of January, 2014, a true, correct and complete copy of the foregoing Motion to Intervene and Participate in Oral Argument was filed with the Court and served on the following via the Court's ECF system:

Peggy A. Tomsic                tomsic@mgplaw.com
James E. Magleby               magleby@mgplaw.com
Jennifer Fraser Parrish        parrish@mgplaw.com
MAGLEBY & GREENWOOD, P.C.
170 South Main Street, Suite 850
Salt Lake City, UT 84101

Kathryn D. Kendell             kkendall@nclrights.org
Shannon P. Minter              sminter@nclrights.org
David C. Codell                dcodell@nclrights.org
National Center for Lesbian Rights
870 Market St., Ste. 370
San Francisco, CA 94102

Ralph Chamness                 rchamness@slco.org
Darcy M. Goddard               dgoddard@slco.org
Salt Lake County District Attorneys
2001 South State, S3700
Salt Lake City, UT 84190

Philip S. Lott                 phillott@utah.gov
Stanford E. Purser             spurser@utah.gov
Gene C. Schaerr                gschaerr@gmail.com
Office of the Attorney General for the
    State of Utah
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT 84114

Ralph Chamness                 rchamness@slco.org
Darcy M. Goddard               dgoddard@slco.org
Salt Lake County District Attorneys
2001 South State, S3700
Salt Lake City, UT 84190

                              /s/ Roberta A. Kaplan

14

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| DEREK KITCHEN, individually;<br>MOUDI SBEITY, individually;<br>KAREN ARCHER, individually;<br>KATE CALL, individually;<br>LAURIE WOOD, individually; and<br>KODY PARTRIDGE, individually,<br><br>       Plaintiffs - Appellees,<br><br>v.<br>GARY R. HERBERT, in his official<br>capacity as Governor of Utah, and<br>SEAN D. REYES, in his official<br>capacity as Attorney General of Utah,<br><br>       Defendants – Appellants,<br><br>and<br><br>SHERRIE SWENSEN, in her official<br>capacity as Clerk of Salt Lake County.<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 13-4178 |

**DECLARATION OF DOUGLAS WORTHAM IN SUPPORT OF
MOTION TO INTERVENE**

DOUGLAS WORTHAM, declares under penalty of perjury, pursuant to

28 U.S.C. § 1746, as follows:

    1.    I have personal knowledge of the facts stated herein.  I am submitting this

affidavit in support of the Proposed Intervenor Couples' motion to intervene.

2.      I reside in Salt Lake City, Utah and I have lived in Utah since 1972. I was born in Idaho Falls, Idaho. I am 59 years old.

3.      My partner, Nicholas Nero, and I have been in a committed relationship for 30 years. We have lived in Utah during that entire period.

4.      Nick and I are not married in any state, including Utah.

5.      Nick and I enjoy traveling together, primarily to French-speaking Europe and to Québec. Previously, we raised and cared for our dog Mouse, who passed away a few years ago at the age of 15. We still have pictures of Mouse strewn about our home.

6.      In 2008, Nick fell seriously ill, and required hospitalization in Denver for three months. I flew alongside Nick on the Life Flight to Denver, and I stayed in Denver the entire time he was there. I spent the greater part of every day in his hospital room with him, never leaving his side. I made some serious medical decisions on Nick's behalf, and thankfully, the doctors in Denver saved his life. Although the law does not recognize our relationship and there was no guarantee that I, as a non-spouse, would have the access and authority that I had, I am grateful that the doctors and our community saw us as a couple on the same plane as any other couple. In particular, I am grateful that my employer granted me leave and that my employer and the GLTB communities raised money to help pay our medical bills.

7.      Nick and I and own a home together in the Marmalade Hill neighborhood of Salt Lake City. We also keep joint checking and savings accounts.

8.      I received a bachelor's degree in French teaching from Weber State University, in Ogden, Utah. During college, I also served a two-year Mormon mission in France and Belgium.

9.      For the past 36 years, I have been employed as a high school French teacher by an independent private school in Salt Lake City.  In addition to teaching, I am chair of the World Languages Department and I serve on the Faculty Budget Committee. I also helped establish the ombudsman program regarding faculty–administration disputes and serve as Upper School ombudsman.

10.     I am very active in the Salt Lake community.  I was one of the co-founders of Equality Utah, a non-profit based in Salt Lake City, and I currently serve on the organization's advisory board.  I served on the Board of Directors of the ACLU of Utah and I served on the Marmalade Library Steering Committee to help plan for a new public library to be built in my neighborhood.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29, 2014.

_Douglas Wortham_
Douglas Wortham

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| DEREK KITCHEN, individually;<br>MOUDI SBEITY, individually;<br>KAREN ARCHER, individually;<br>KATE CALL, individually;<br>LAURIE WOOD, individually; and<br>KODY PARTRIDGE, individually,<br><br>        Plaintiffs - Appellees,<br><br>v.<br>GARY R. HERBERT, in his official<br>capacity as Governor of Utah, and<br>SEAN D. REYES, in his official<br>capacity as Attorney General of Utah,<br><br>        Defendants – Appellants,<br><br>and<br><br>SHERRIE SWENSEN, in her official<br>capacity as Clerk of Salt Lake County.<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 13-4178 |

DECLARATION OF LYNN BELTRAN IN SUPPORT OF
MOTION TO INTERVENE

LYNN BELTRAN, declares under penalty of perjury, pursuant to

28 U.S.C. § 1746, as follows:

1.    I have personal knowledge of the facts stated herein. I am submitting this

affidavit in support of the Proposed Intervenor Couples' motion to intervene.

2.     I reside in Salt Lake City, Utah and I have lived in Utah since 2000. I was born in Rochester, New York. I am 49 years old.

3.     My partner, Claudia O'Grady, and I have been in a committed relationship for 14 years. We are both college lacrosse officials and we met at an event for officials that was held in Salt Lake City. We own a home together in Salt Lake City. We keep joint financial accounts.

4.     Claudia has lived in Utah since 1997.

5.     Claudia and I enjoy spending time hiking, biking, and camping in Utah's beautiful mountains and desert. We also share a love for cats and dogs and have fostered numerous of each over the years.

6.     Claudia and I married in Salt Lake County on December 23, 2013.

7.     I received a bachelor's degree from San Diego State University and a Master's of Public Health from the University of Utah.

8.     Claudia and I have both dedicated our careers to public service. Claudia works in affordable multi-family housing finance as a Vice President. I work for the Salt Lake County Health Department as an Epidemiology Supervisor. The primary reason we decided to live together in Salt Lake City is that we felt we could make a stronger impact on the community in Salt Lake.

9.     For the past 14 years, I have worked at the Salt Lake County Health Department, starting as a health educator, then moving into a position as an epidemiologist and more recently serving as the Epidemiology Supervisor overseeing the HIV and STD programs. I have always enjoyed my service in public health in Salt Lake County, as the Salt Lake County Health Department is committed to ensuring the wellbeing of all of Salt Lake County's citizens.

10.    As an employee of Salt Lake County, I participate in Utah Retirement Systems, the state pension program. I have participated in the program during my 14 years at the Salt Lake County Health Department, and my retirement benefits are now vested. Upon and during retirement, I will receive continuing monthly payments that will provide financial security. Unlike spouses of retirees, if Claudia survives me, she will not be eligible to receive my monthly retirement payments. The same is true with Claudia's participation in Utah Retirement Systems, and it is also important that if I were to survive Claudia, I would not be eligible to receive Claudia's monthly retirement payments although spouses of straight employees are currently eligible for this benefit.

11.    Claudia subscribes to health coverage through her employer, from Public Employees Health Program ("PEHP"), a subdivision of Utah Retirement Systems. PEHP does not allow me to join Claudia's health plan, although it allows spouses of straight employees to join. This forces me to purchase more expensive, private insurance coverage sponsored by my employer and denies us the convenience of sharing health insurance coverage. We would save approximately $80 per month in health insurance premiums if I was allowed to join Claudia's coverage as a spouse.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2014.

Lynn Beltran

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| DEREK KITCHEN, individually;<br>MOUDI SBEITY, individually;<br>KAREN ARCHER, individually;<br>KATE CALL, individually;<br>LAURIE WOOD, individually; and<br>KODY PARTRIDGE, individually,<br><br>        Plaintiffs - Appellees,<br><br>v.<br>GARY R. HERBERT, in his official<br>capacity as Governor of Utah, and<br>SEAN D. REYES, in his official<br>capacity as Attorney General of Utah,<br><br>        Defendants – Appellants,<br><br>and<br><br>SHERRIE SWENSEN, in her official<br>capacity as Clerk of Salt Lake County.<br><br>        Defendant. | No. 13-4178 |

DECLARATION OF STANFORD ROVIG IN SUPPORT OF
<u>MOTION TO INTERVENE</u>

STANFORD ROVIG, declares under penalty of perjury, pursuant to

28 U.S.C. § 1746, as follows:

1.    I have personal knowledge of the facts stated herein.  I am submitting this

affidavit in support of the Proposed Intervenor Couples' motion to intervene.

2.      I reside in Salt Lake City, Utah and I have lived in Utah since 1974.  I was born in Blackfoot, Idaho.  I am 64 years old.

3.      My partner, Charles Fluke, and I have been in a committed relationship for almost eight years.  We became friends approximately eleven years ago during dinner parties hosted by a mutual friend.  After we became close friends, and as we became romantically involved, we decided that it was worth risking our friendship to give a committed relationship a chance.  It has worked out wonderfully.

4.      Charles grew up in Eugene, Oregon and also moved to Utah in 1974.  Charles is 68 years old.

5.      Charles and I married on December 31, 2013 in Salt Lake County.

6.      We married for three reasons:  love, to secure rights, and to make a political statement.  In particular, I am concerned that without marriage, we will miss out on certain tax and inheritance rights.

7.      I am a retired architect and Charles is a retired elementary school teacher and a Vietnam veteran.  As retirees, Charles and I live an active life together in Salt Lake City.  We regularly attend the symphony, opera, and ballet.  We garden together.  We travel together to the red rocks of Southern Utah.


In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.


Executed on January 29, 2014.

_____
Stanford Rovig