No. 13-4178

## In the United States Court of Appeals
## for the Tenth Circuit

_____
_____

**DEREK KITCHEN, *et al.*,**
**Plaintiffs-Appellees,**

**vs.**

**GARY R. HERBERT, *et al.*,**
**Defendants-Appellants.**

_____
_____

**Appeal from the United States District Court**
**for the District of Utah**
**Civil Case No. 2:13-CV-217**
**(Honorable Robert J. Shelby)**

_____
_____

## BRIEF OF *AMICUS CURIAE*, THE FAMILY RESEARCH COUNCIL, IN SUPPORT OF THE DEFENDANTS-APPELLANTS AND IN SUPPORT OF REVERSAL

**Paul Benjamin Linton**
**921 Keystone Avenue**
**Northbrook, Illinois 60062-3614**
**(847) 291-3848 (tel)**
**(847) 412-1594 (fax)**
**PBLCONLAW@AOL.COM**

Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned

states that *amicus curiae*, the Family Research Council, is not a corporation that

issues stock or has a parent corporation that issues stock.

<u>s/Paul Benjamin Linton</u>
Counsel for the *Amicus*

February 6, 2014

i

Table of Contents

Corporate Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Prior or Related Appeals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

Interest of the *Amicus*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT:

I.    AMENDMENT 3 DOES NOT INTERFERE WITH THE
      FUNDAMENTAL RIGHT TO MARRY PROTECTED BY THE DUE
      PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. . . . . . . . . 3

II.   AMENDMENT 3 DOES NOT DISCRIMINATE ON THE BASIS OF SEX
      IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
      FOURTEENTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Compliance

ECF Certifications

Certificate of Service

Table of Authorities

*Cases*

*Andersen v. King County*, 138 P.3d 963 (Wash. 2006). . . . . . . . . . . . . . . . *passim*

*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993). . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Baker v. Nelson*, 409 U.S. 910 (1972).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971),
    *appeal dismissed for want of a substantial federal question*,
    409 U.S. 910 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 18, 23

*Baker v. State*, 744 A.2d 864 (Vt. 1999).. . . . . . . . . . . . . . . . . . . . . . 16, 18, 23

*Bishop v. United States*, No. 04-CV-848-TCK-TLW
    (N.D. Okla. Jan. 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bowers v. Hardwick*, 478 U.S. 186 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. Board of Education*, 347 U.S. 483 (1954).. . . . . . . . . . . . . . . . . . . . 21

*Brown v. Buhman*, Case No. 2:11-cv-0652-CW (D. Utah Dec. 13, 2013).. . . . . . 15

*Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006). . . . . . . . 6

*Collins v. City of Harker Heights, Texas*, 503 U.S. 115 (1992). . . . . . . . . . . . . . 4

*Conaway v. Deane*, 932 A.2d 571 (Md. 2007). . . . . . . . . . . . . . . . . . . . . . *passim*

*Craig v. Boren*, 429 U.S. 190 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Dean v. District of Columbia*, 653 A.2d 307 (D.C. App. 1995). . . . . . . . . . . 6, 17

*District Attorney's Office for the Third Judicial District v. Osborne*,
    557 U.S. 52 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

iii

*Force by Force v. Pierce City R-VI School District,*
570 F. Supp. 1020 (W.D. Mo. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Frontiero v. Richardson,* 411 U.S. 677 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Goodridge v. Dep't of Health,* 798 N.E.2d 941 (Mass. 2003). . . . . . . . . . . . *passim*

*Griego v. Oliver,* \_\_\_P.3d\_\_\_ (N.M. Dec. 19, 2014). . . . . . . . . . . . . . . . . . . . . . . 19

*Hernandez v. Robles,* 805 N.Y.S.2d 354 (N.Y. App. Div. 2005),
*aff'd* 855 N.E.2d 1 (N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 7, 18, 22, 23

*Hernandez v. Robles,* 855 N.E.2d 1 (N.Y. 2006). . . . . . . . . . . . . . . . . . 6, 17, 18, 23

*Hollingsworth v. Perry,* 133 S.Ct. 2652 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Kandu,* 315 B.R. 123 (Bankr. W.D. Wash. 2005). . . . . . . . . . . . . . 5, 8, 18, 23

*In re Kane,* 808 N.Y.S.2d 566 (N.Y. App. Div. 2006),
*aff'd* 855 N.E.2d 1 (N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Marriage Cases,* 49 Cal. Rptr. 3d 675 (Cal. Ct. App. 2006),
*rev'd on other grounds,* 183 P.3d 384 (Cal. 2008). . . . . . . . . . . . . . . . . . . . 18

*In re Marriage Cases,* 183 P.3d 384 (Cal. 2008). . . . . . . . . . . . . . . . . 7, 17, 18, 23

*In re Marriage of J.B. & H.B.* 326 S.W.3d 654, 674-76 (Tex. App. 2010). . . . . . . 6

*Jackson v. Abercrombie,* 884 F.Supp.2d 1065 (D. Haw. 2012),
*appeals pending,* Nos. 12-16995, 12-16998 (Ninth Circuit). . . . . . . . 5, 8, 17

*Jones v. Hallahan,* 501 S.W.2d 588 (Ky. 1973). . . . . . . . . . . . . . . . . . . . . . 6, 17, 18

*Kerrigan v. Comm's of Public Health,* 957 A.2d 407 (Conn. 2008) . . . . . . . . . . . 18

*Lawrence v. Texas,* 539 U.S. 558 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Lewis v. Harris,* 875 A.2d 259 (N.J. Super Ct. App. Div. 2005),
*aff'd in part and modified in part,* 908 A.2d 196 (N.J. 2006). . . . . . . . . . . 14

*Lewis v. Harris*, 908 A.2d 196 (N.J. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Louisiana High School Athletic Ass'n v. St. Augustine High School*,
    396 F.2d 224 (5th Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Loving v. Virginia*, 388 U.S. 1 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20, 22, 23

*Maynard v. Hill*, 125 U.S. 190 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McLaughlin v. Florida*, 379 U.S. 184 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Meyer v. Nebraska*, 262 U.S. 390 (1923). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mississippi University for Women v. Hogan*, 458 U.S. 718 (1982). . . . . . . . . . . . 21

*Morrison v. Sadler*, Cause No. 49D13-0211-PL-00196,
    Order on Motion to Dismiss at 13, May 7, 2003.
    *aff'd*, 821 N.E.2d 15 (Ind. Ct. App. 2005). . . . . . . . . . . . . . . . . . . . . . . 14-15

*Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*O'Connor v. Board of Education of School District No. 23*,
    645 F.2d 578 (7th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Perry v. Schwarzenegger*, 704 F.Supp.2d 921 (N.D. Cal. 2010),
    *aff'd sub nom. Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012),
    *vacated and remanded with instructions to dismiss the appeal*
    *for lack of standing sub nom. Hollingsworth v. Perry*,
    133 S.Ct. 2652 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 17, 24

*Reed v. Reed*, 404 U.S. 71 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reno v. Flores*, 507 U.S. 292 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Samuels v. New York State Dep't of Health*, 811 N.Y.S.2d 136
    (N.Y. App. Div. 2006), *aff'd* 855 N.E.2d 1 (N.Y. 2006). . . . . . . . 5, 7, 18, 23

*Sevcik v. Sandoval*, 2012 WL 5989662 (D. Nev. Nov. 26, 2012),
    *appeal pending*, No. 12-17668 (Ninth Circuit). . . . . . . . . . . . . . . . . . . 17, 23

*Seymour v. Holcomb*, 811 N.Y.S.2d 134 (N.Y. App. Div. 2006),
    *aff'd* 855 N.E.2d 1 (N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Singer v Hara*, 522 P.2d 1187 (Wash. Ct. App. 1974). . . . . . . . . . . . . . 6, 17, 18, 23

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942). . . . . . . . . . . . . . . 9

*Smelt v. County of Orange*, 374 F. Supp.2d 861 (C.D. Cal. 2005),
    *aff'd in part, vacated in part and remanded with directions*
    *to dismiss for lack of standing*, 447 F.3d 673 (9th Cir. 2006). . . . . . . *passim*

*Standhardt v. Superior Court*, 77 P.3d 451 (Ariz. Ct. App. 2003).. . . . . . . . *passim*

*Turner v. Safley*, 482 U.S. 78 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Virginia*, 518 U.S. 515 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Windsor*, 133 S.Ct. 2675 (2013). . . . . . . . . . . . . . . . . . . . 9-10, 18

*Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009).. . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vorchheimer v. School District of Philadelphia*, 532 F.2d 880 (3d Cir. 1976),
    *aff'd mem. by an equally divided Court*, 430 U.S. 703 (1977). . . . . . . . . . 21

*Washington v. Glucksberg*, 521 U.S. 702 (1997). . . . . . . . . . . . . . . . . . . . . . *passim*

*Wilson v. Ake*, 354 F. Supp. 2d 1298 (M.D. Fla. 2005). . . . . . . . . . . . . . . . . . 5, 18

*Zablocki v. Redhail*, 434 U.S. 374 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statutes

U.S. Const. amend. XIV, § 1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1 U.S.C. § 7 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17-18

Haw. Const. art. I, § 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Utah Const. art. I, § 29 (Amendment 3). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Utah Code § 30-1-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Utah Code § 30-1-4.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Other Authorities*:

Luke Davis, "Can a person in a vegetative state get married,"
    http://blog.practicalethics.ox.ac. uk/ 2013/10/can-a-person-in-a-
    vegetative-state get-married. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bernard Schwartz, A Book of Legal Lists (Oxford University Press 1997). . . . . 20

Tr. of Oral Argument, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013)
    (March 26, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Congressional Record, 118 Cong. Rec. 9331. . . . . . . . . . . . . . . . . . . . . . . . . . 19

Prior or Related Appeals

*Bishop v. Smith*, No. 14-5003, pending in this Court, involves a constitutional challenge to Oklahoma's definition of marriage as only the union between a man and a woman.

Additionally, there is a pending appeal in the United States Court of Appeals for the Ninth Circuit addressing the constitutionality of Nevada's definition of marriage. *Sevcik v Sandoval*, No. 12-17668.

**Interest of the *Amicus***

The Family Research Council (FRC) was founded in 1983 as an organization dedicated to the promotion of marriage and family and the sanctity of human life in national policy.  Through books, pamphlets, media appearances, public events, debates and testimony, FRC's team of policy experts review data and analyze Congressional and executive branch proposals that affect the family.  FRC also strives to assure that the unique attributes of the family are recognized and respected through the decisions of courts and regulatory bodies.

FRC champions marriage and family as the foundation of civilization, the seedbed of virtue and the wellspring of society.  Believing that God is the author of life, liberty and the family, FRC promotes the Judeo-Christian worldview as the basis for a just, free and stable society.  Consistent with its mission statement, FRC is committed to strengthening traditional families in America.

FRC publicly supported the successful effort to adopt Amendment 3 (codified as art. I, § 29, of the Utah Constitution), as well as similar amendments in other States.  FRC, therefore, has a particular interest in the outcome of this case.  In FRC's judgment, recognition of same-sex marriages– either by state legislators or by the courts–would be detrimental to the institution of marriage, children and society as a whole.  And, for the reasons set forth herein, nothing in the Constitution, properly understood, compels such recognition.

1

This brief is submitted pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure with the consent of all parties.  No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person other than the *amicus curiae* or its counsel contributed money that was intended to fund preparing or submitting the brief.

**ARGUMENT**

**I.**

**AMENDMENT 3 DOES NOT INTERFERE WITH THE
FUNDAMENTAL RIGHT TO MARRY PROTECTED BY THE
DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.**

The district court held that Amendment 3 (Utah Const. art. I, § 29) which

reserves marriage to opposite-sex couples,[1] impermissibly interferes with the

fundamental right to marry protected by the Due Process Clause and, therefore, is

unconstitutional.  Mem. Dec. & Order at 16-32.  The court's holding and the novel

and unprincipled fundamental rights analysis on which it is based are deeply

flawed.  Accordingly, the district court's judgment must be reversed.

In determining whether an asserted liberty interest (or right) should be

regarded as fundamental for purposes of substantive due process analysis under

the Due Process Clause of the Fourteenth Amendments (infringement of which

would call for strict scrutiny review), the Supreme Court applies a two-prong test.

First, there must be a "careful description" of the asserted fundamental liberty

interest.  *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation and

---

[1] Like the district court, see Mem. Dec. & Order at 8 n. 1, *amicus* shall refer
to "Amendment 3" as shorthand for both the Utah state constitutional amendment
prohibiting same-sex marriage the voters approved on November 2, 2004
(Amendment 3), and the statutes the Utah General Assembly has enacted
prohibiting such marriages (Utah Code §§ 30-1-2, 30-1-4.1).

3

internal quotation marks omitted).[2]  Second, the interest, so described, must be

firmly rooted in "the Nation's history, legal traditions, and practices." *Id.* at 710.

In *Glucksberg*, the Court characterized the asserted liberty interest as "a right to

commit suicide which itself includes a right to assistance in doing so," not whether

there is "a liberty interest in determining the time and manner of one's death," "a

right to die," "a liberty to choose how to die," "[a] right to choose a humane,

dignified death" or "[a] liberty to shape death." *Id*. at 722-23 (citations and

internal quotation marks omitted).

　　　As in other cases asserting fundamental liberty interests, it is necessary to

provide a "careful description" of the fundamental liberty interest at stake.  For

purposes of substantive due process analysis, therefore, the issue here is not *who*

---

[2] *Glucksberg* was not an anomaly in demanding precision in defining the nature of the interest (or right) being asserted.  *See, e.g., Reno v. Flores*, 507 U.S. 292, 302 (1993) (describing alleged right as "the . . . right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than that of a government-operated or government-selected child-care institution," not whether there is a right to 'freedom from physical restraint," "a right to come and go at will" or "the right of a child to be released from all other custody into the custody of its parents, legal guardians, or even close relatives"); *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125-26 (1992) (describing asserted interest as a government employer's duty "to provide its employees with a safe working environment")*.  See also District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72-75 (2009) (convicted felon has no freestanding "substantive due process right" to obtain the State's DNA evidence in order to apply new DNA-testing technology that was not available at the time of his trial) (relying upon *Glucksberg*, *Reno* and *Collins*).

may marry, but *what* marriage is.  The principal defining characteristic of marriage, as it has been understood in our "history, legal traditions, and practices," is the union of a man and a woman.[3]  Properly framed, therefore, the issue before this Court is not whether there is a fundamental right to enter into a marriage with the person of one's choice, but whether there is a right to enter into a same-sex marriage.  With the exceptions of the district court's decision in *Perry v. Schwarzenegger*, 704 F.Supp.2d 921 (N.D. Cal. 2010), *aff'd sub nom. Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated and remanded with instructions to dismiss the appeal for lack of standing sub nom. Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013), and the judgment in this case, no court has held that the Due Process Clause requires the States to allow (or recognize) same-sex marriages.[4]  That is not

---

[3] *See Samuels v. New York State Dep't of Health*, 811 N.Y.S.2d 136, 141 (App. Div. 2006), *aff'd*, 855 N.E.2d 1 (N.Y. 2006):  "To remove from 'marriage' a definitional component of that institution (i.e., one woman, one man) which long predates the constitutions of this country and state . . . would, to a certain extent, extract some of the deep roots that support its elevation to a fundamental right." Citation and internal quotation marks omitted.

[4] *See Baker v. Nelson*, 409 U.S. 810 (1972) (dismissing, for want of a substantial federal question, due process challenge to state law reserving marriage to opposite-sex couples); *Smelt v. County of Orange*, 374 F. Supp.2d 861, 877-79 (C.D. Cal. 2005), *aff'd in part*, *vacated in part and remanded with directions to dismiss for lack of standing*, 447 F.3d 673 (9th Cir. 2006); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1305-07 (M.D. Fla. 2005); *Jackson v. Abercrombie*, 884 F.Supp.2d 1065, 1093-98 (D. Haw. 2012), *appeals pending*, Nos. 12-16995, 12-16998 (Ninth Circuit); *In re Kandu*, 315 B.R. 123, 138-41 (Bankr. W.D. Wash. 2004); *Standhardt v. Superior Court*, 77 P.3d 451, 455-60 (Ariz. Ct. App. 2003); *Baehr v.*

surprising.  "In the nearly one hundred and fifty years since the Fourteenth

Amendment was adopted, . . . no Justice of the Supreme Court has suggested that a

state statute or constitutional provision codifying the traditional definition of

marriage violates the Equal Protection Clause *or any other provision of the United*

*States Constitution.*"  *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 870

(8th Cir. 2006) (emphasis added).

Tacitly conceding that there is no substantive due process right to enter into

a same-sex marriage, the district court held that "the *Glucksberg* analysis is

inapplicable here" because the plaintiffs "are seeking access to an existing right,

not the declaration of a new right."  Mem. Dec. & Order at 29.  The district court's

---

*Lewin*, 852 P.2d 44, 56 (Haw. 1993) ("the federal construct of the fundamental
right to marry . . . presently contemplates unions between men and women);
*Conaway v. Deane*, 932 A.2d 571, 624 (Md. 2010) (rejecting argument that "the
right to same-sex marriage is so deeply embedded in the history, tradition, and
culture of this State and Nation, that it should be deemed fundamental"); *Jones v.
Hallahan*, 501 S.W.2d 588, 590 (Ky. 1973); *Baker v. Nelson*, 191 N.W.2d 185,
186-87 (Minn. 1971), *appeal dismissed for want of a substantial federal question*,
409 U.S. 810 (1972); *Hernandez v. Robles*, 855 N.E.2d 1, 9 (N.Y. 2006) ("[t]he
right to marry someone of the same sex . . . is not 'deeply rooted'" "in this
Nation's history and tradition") (citation and internal quotation marks omitted); *In
re Marriage of J.B. & H.B.* 326 S.W.3d 654, 674-76 (Tex. App. 2010); *Singer v.
Hara*, 522 P.2d 1187, 1195-97 & n. 11 (Wash. Ct. App. 1974); *Dean v. District of
Columbia*, 653 A.2d 307, 331-33 (D.C. Ct. App. 1995), *id*. at 361-62 (Terry, J.,
concurring), *id*. at 363-63 (Steadman, J., concurring).  *See also Andersen v. King
County*, 138 P.3d 963, 979 (Wash. 2006) (rejecting dissent's view that there is a
"fundamental right to marry a person of the same sex" as "an astonishing
conclusion, given the lack of any authority to support it; *no* appellate court
applying a federal constitutional analysis has reached this result").

attempt to evade the fundamental rights methodology of *Glucksberg* is unavailing.

With the exception of the California Supreme Court's decision striking down

Proposition 22, the statutory predecessor to Proposition 8, *see In re Marriage*

*Cases*, 183 P.3d 384, 421 (Cal. 2008), *every* reviewing court to have considered

the issue has understood that same-sex couples challenging restrictions on same-

sex marriage *are*, in fact, seeking recognition of a *new* right.[5]  And with the

---

[5]  *See Lewis v. Harris*, 908 A.2d 196, 206 (N.J. 2006) (defining issue as "whether the right of a person to marry someone of the same sex is so deeply rooted in the traditions and collective conscience of our people that it must be deemed fundamental").  In rejecting a state privacy challenge to the state law reserving marriage to opposite-sex couples, the Hawaii Supreme Court stated that "the precise question facing this court is whether we will extend the *present* boundaries of the fundamental right of marriage to include same-sex couples, or, put another way, whether we will hold that same-sex couples possess a fundamental right to marry.  In effect, as the applicant couples frankly admit, *we are being asked to recognize a new fundamental right*."  *Baehr v. Lewin*, 852 P.2d 44, 56-57 (Haw. 1993) (second emphasis added).  *See also Hernandez v. Robles*, 805 N.Y.S.2d 354, 359  (App. Div. 2005) (observing that plaintiffs seek "an alteration in the definition of marriage"), *aff'd*, 855 N.E.2d 1 (N.Y. 2006); *Standhardt v. Superior Court*, 77 P.3d 451, 458 (Ariz. Ct. App. 2003) ("recognizing a right to marry someone of the same sex would not expand the established right to marry, but would redefine the legal meaning of 'marriage'"); *Samuels*, 811 N.Y.S.2d at 141 ("this case is not simply about the right to marry the person of one's choice, but represents a significant expansion into new territory which is, in reality, *a redefinition of marriage*") (emphasis added); *Conaway v. Deane*, 932 A.2d 571, 617-24 (Md. 2007); *Andersen*, 138 P.3d at 976-80 (plurality), *id*. at 993 (J.M. Johnson, J., concurring in judgment only) (no court possesses the power "to create a new fundamental right to same-sex 'marriage'"). *See also Goodridge v. Dep't of Public Health*, 798 N.E.2d 941, 965 (Mass. 2003) (acknowledging that "our decision today marks a significant change in the definition of marriage as it has been inherited from the common law, and understood by many societies for centuries").

exceptions of the opinion in *Perry v. Schwarzenegger*, 704 F.Supp.2d 921 (N.D.

Cal. 2010),[6] and the judgment in this case, federal district courts are in agreement

that plaintiffs seek recognition of a new right.[7]  Nothing in our "history, legal

traditions, and practices" supports recognition of such a right.

The Supreme Court has recognized a substantive due process right to marry.

*See Loving v. Virginia*, 388 U.S. 1 (1967), *Zablocki v. Redhail*, 434 U.S. 374

(1978), and *Turner v. Safley*, 482 U.S. 78 (1987).  But the right recognized in

these decisions all concerned *opposite*-sex, not *same*-sex, couples.  *See Loving*,

388 U.S. at 12, *Zablocki*, 434 U.S. at 384, *Turner*, 482 U.S. at 94-97.[8]  That the

---

[6] In *Perry*, the district court made the remarkable statement that the restriction of marriage to opposite-sex couples was "*never* part of the historical core of the institution of marriage."  704 F.Supp.2d at 187 (emphasis added).

[7] *See Jackson*, 884 F.Supp.2d at 1095 ("missing from [p]laintiffs' asserted 'right to marry the person of one's choice' is its centerpiece: the right to marry someone of the same gender"), *id*. at 1096 ("[t]he Court agrees that the right at issue here is an asserted new right to same-sex marriage"); *Smelt*, 374 F.Supp.2d at 878-79 (rejecting same-sex couple's argument that they were "not asking the Court to find a new fundamental right, but only to find [that] the existing fundamental right to marry includes their right to marry each other"); *Kandu*, 315 B.R. at 140 ("[e]ven if this Court believes that there should be a fundamental right to marry someone of the same sex, it would be incorrect to suggest that the Supreme Court, in its long line of cases on the subject, conferred the fundamental right to marry on anything other than a traditional, opposite-sex relationship").

[8] The district court's reliance on *Loving*, which struck down anti-miscegenation statutes, in support of its due process holding, *see* Mem. Dec. & Order at 20-21, 28, is misplaced.  The court confuses a *restriction* on the exercise of a fundamental right with the *nature* of the right itself, which has always been understood to refer to the marriage of a man and a woman.

8

right to marry is limited to opposite-sex couples is clearly implied in a series of

Supreme Court cases relating marriage to procreation and childrearing.  *See*

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942) ("Marriage and

procreation are fundamental to the very existence and survival of the race");

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (liberty language in Due Process

Clause includes "the right of the individual . . . to marry, establish a home and

bring up children"); *Maynard v. Hill*, 125 U.S. 190, 211 (1888) (characterizing the

institution of marriage as "the foundation of the family and of society, without

which there would be neither civilization nor progress").[9]

The Supreme Court has never stated or even implied that the federal right to

marry extends to same-sex couples.[10]  Until the Massachusetts Supreme Judicial

---

[9] The district court's observation that "many opposite-sex couples . . . are unable to reproduce or . . . choose not to have children" and that "many same-sex couples are also in the position of raising a child, perhaps through adoption or surrogacy," Mem. Dec. & Order at 26, does not change the biological reality that only opposite-sex couples are capable of procreating through their sexual activity. Marriage is the social and legal institution designed to channel that activity into stable relationships that protect the children so procreated.  It is simply obtuse not to recognize this, as Justice Cordy noted in his dissent in *Goodridge*:  "Civil marriage is the product of society's critical need to manage procreation as the inevitable consequence of intercourse between members of the opposite-sex.. Procreation has always been at the root of marriage and the reasons for its existence as a social institution." 798 N.E.2d at 1002 n. 34 (Cordy, J., dissenting).

[10] The district court's reliance, *see* Mem. Dec. & Order at 11-13, 15-16, 30-31, upon the Supreme Court's decisions in *Lawrence v. Texas*, 539 U.S. 558 (2003), and *United States v. Windsor*, 133 S.Ct. 2675 (2013), is misplaced.

Court's decision in *Goodridge* in 2003, slightly more than ten years ago, no State

allowed or recognized same-sex marriages.  And of the seventeen States that now

allow and recognize same-sex marriages, six (California, Connecticut, Iowa,

Massachusetts, New Jersey and New Mexico) have done so only as the result of

state (or in the case of California, federal) constitutional litigation.  With respect to

---

*Lawrence* overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986), and struck down,
on due process grounds, a Texas law that criminalized acts of sodomy.  In
*Lawrence*, the Court expressly did *not* decide whether "the government must give
formal recognition to any relationship that homosexual persons seek to enter."
539 U.S. at 578.  In light of the Court's declination to decide that issue, the district
court's claims that its holding striking down Amendment 3 "is supported, *even
required*" by *Lawrence*, Mem. Dec. & Order at 30 (emphasis added), is
inexplicable, except to the extent that the court relied upon Justice Scalia's
*dissenting* opinion purporting to predict what *Lawrence* would mean for the issue
of same-sex marriage.  *Id*, at 31 (quoting *Lawrence*, 539 U.S. at 604-05 (Scalia, J.,
dissenting)).  In *Windsor*, the Court struck down § 3 of the federal Defense of
Marriage Act, 1 U.S.C. § 7 (2005), 28 U.S.C. § 1738C (Supp. 2005), on the
grounds that it impermissibly interfered with the choice of a State to recognize an
otherwise valid out-of-State same-sex marriage.  Significantly, in the penultimate
sentence of his opinion for the Court, Justice Kennedy cautioned that "*This
opinion* and its holding are confined to those lawful marriages," 133 S.Ct. at 2696
(emphasis added), *i.e.*, same-sex marriages that are allowed or recognized by the
law of a particular State.  In other words, neither the holding *nor the opinion* – that
is to say, the "reasoning" of the majority opinion, *see* Mem. Dec. & Order at 15 –
has any application outside the context of the case (whether the federal benefits of
marriage may be denied to same-sex couples whose marriages are allowed or
recognized by a given State).  The district court simply ignored this limitation on
the application of *Windsor* to other issues, relying, instead, upon Justice Scalia's
dissenting opinion, predicting what the "rationale" of the majority opinion
portends for the issue of same-sex marriage.  *See* Mem. Dec. & Order at 13
(quoting *Windsor*, 133 S.Ct. at 2709 (Scalia, J., dissenting)).  Of course, in
*Windsor*, as in *Lawrence*, it is the *majority* opinion that controls the scope and
application of a decision, not the Cassandra-like warnings of a *dissent*.

the eleven States that have not acted under compulsion of a court order, two (New Hampshire, Vermont) enacted same-sex marriage laws in 2009, one (New York) in 2011 and the other eight (Delaware, Hawaii, Illinois, Maine, Maryland, Minnesota, Rhode Island and Washington) only at various times since November 2012.  At the same time, three times as many States have approved state constitutional amendments reserving the institution of marriage to opposite-sex couples (twenty-nine States, excluding California) or statutory equivalents (four States).  Given that same-sex marriage has been allowed only since 2003 (and then only in one State), it cannot be said that same-sex marriage is firmly rooted in "the Nation's history, legal traditions, and practices."   To paraphrase *Osborne*, there is no "long history" of a right to enter into a same-sex marriage and "[t]he mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it."  557 U.S. at 72 (citation and internal quotation marks omitted). "[S]ame-sex marriages are neither deeply rooted in the legal and social history of our Nation or state nor are they implicit in the concept of ordered liberty." *Standhardt*, 77 P.3d at 459.  It is precisely because the opposite-sex nature of marriage is the essence of marriage as it has been understood in our history and traditions that the district court should have rejected plaintiffs' substantive due

process claim.[11]

The district court acknowledged that its role "is not to define marriage, an exercise that would be improper given the [S]tates' primary authority in this realm." Mem. Dec. & Order at 16. Yet, that, in fact, is precisely what the court *has* done, it has *redefined* marriage to give it a meaning that it has never had. In place of the historical and traditional understanding of the nature of marriage and the limitations that have always and everywhere been placed on the exercise of the right to marry (discussed below), the district court has substituted an abstract and unfettered right to marry the person of one's choice. *Id*. at 2, 20-23, 30 ("[a]ll citizens, regardless of their sexual identity, have a fundamental right to liberty, and this right protects an individual's ability to marry and the intimate choices a person makes about marriage and family"). The court reformulates the right to marry as "the right to make a public commitment to form an exclusive relationship and create a family with a partner with whom the person shares an intimate and sustaining emotional bond"). *Id*. at 28. Under that formulation, no law restricting the fundamental right to marry could be upheld unless it is "narrowly tailored to

---

[11] The district court notes that "[t]he right to marry is intertwined with the rights of privacy and intimate association . . . ." Mem. Dec. & Order at 23. Amendment 3, however, places no restrictions on anyone's "privacy and intimate association," only whether the State will give public recognition to private relationships. The "rights of privacy and intimate association" do not define the scope of the right to marry, but, with respect to marriage, are derivative thereof.

12

serve a compelling state interest." *Id*. at 32 (citation and internal quotation marks
omitted).  Thus, prohibitions of polygamous (or bigamous) marriages, marriages
between closely related persons, marriages of minors under a certain age and
marriages of persons who lack contractual capacity would all be constitutionally
suspect.  Presumably, as the district court opined, regulation of "the age at which a
person may be married" could be justified by the State's "compelling interest in
protecting children against abuse and coercion," and a law not allowing "an
individual to marry if that person is mentally incapable of forming the requisite
consent" could be justified by similar considerations.  *Id*.[12]  The court, however,
offered no opinion on whether prohibitions of polygamous, bigamous and
incestuous marriages (between adult relatives) could withstand strict scrutiny
review.  Having abandoned the historical meaning of marriage and the restrictions
that have always and everywhere been placed on the right to marry, the court is
unable to offer any principled rationale for limiting marriage to one spouse or to
non-relatives.

---

[12] Even the seemingly unassailable requirement that a person must have
contractual capacity to enter into a marriage has been challenged.  *See* Luke Davis,
 "Can a person in a vegetative state get married," http://blog.practicalethics.ox.ac.
uk/ 2013/10/can-a-person-in-a-vegetative-state get-married (last checked October
14, 2013) (reporting case asking court to order county clerk to issue marriage
license for a woman whose fiancé had lapsed into a persistent vegetative state
during brain surgery).

In the oral argument in *Hollingsworth v. Perry*, 133 S.Ct.2652 (2013), Justice Sotomayor asked respondents' counsel, under his formulation of the right to marry (the same as the one advanced by the plaintiffs and adopted by the district court in the case at bar), "what State restrictions could ever exist?  Meaning, what State restrictions with respect to the number of people, with respect to . . . the incest laws, the mother and child, assuming that they are [of] age . . . , but what's left?"  Tr. 46-47 (March 26, 2013).  Counsel could not provide plausible answers to these questions.  And neither could the district court in this case.

Several courts and judges have recognized that "[t]he same form of constitutional attack that plaintiffs mount against statutes limiting the institution of marriage to members of the opposite sex also could be made against statutes prohibiting polygamy.*"  Lewis v. Harris*, 875 A.2d 259, 270 (N.J. Super. Ct. App. Div. 2005).  *See also Morrison v. Sadler*, Cause No. 49D13-0211-PL-00196, Order on Motion to Dismiss at 13, May 7, 2003 (noting that "[p]laintiffs have not posited a principled theory of marriage that would include members of the same sex but still limit marriage to couples," and observing that "[t]here is no inherent reason why their theories, including the encouragement of long-term, stable relationships, the sharing of economic lives, the enhancement of the emotional well-being of the participants, and encouraging participants to be concerned about

14

others, could not equally be applied to groups of three or more"), *aff'd*, 821

N.E.2d 15 (Ind. Ct. App. 2005).  *See also Goodridge v. Dep't of Public Health*,

798 N.E.2d at 984 n. 2 (Cordy, J., dissenting) (same).[13]

 Once the right to marry is unmoored from its anchor in our history, on what

basis could the State prohibit marriages of closely related  adults?  *See*, *e.g.*, *Muth

v. Frank*, 412 F.3d 808 (7th Cir. 2005) (rejecting challenge to constitutionality of

state criminal incest statute where brother had married his sister).  The district

court's opinion provides no basis on which to answer this question.

 Unless "a challenged state action implicate[s] a fundamental right," there is

no need for "complex balancing of competing interests in every case." *Washington

v. Glucksberg*, 521 U.S. at 722.  All that is necessary is that the state action bear a

"reasonable relationship to a legitimate state interest . . . ."  *Id*.  Amendment 3 does

not implicate the fundamental right to marry.  Accordingly, it is subject to rational

basis review. For the reasons set forth in the brief of the appellants, Amendment 3

is reasonably related to multiple, legitimate state interests.  The district court's

holding to the contrary was erroneous and must be reversed.

---

[13] In a recent development, another federal district court judge in Utah has struck down the State's statute prohibiting bigamy, to the extent that it prohibits a married person from cohabiting with another person in the same household.  *See Brown v. Buhman*, Case No. 2:11-cv-0652-CW, Mem. Dec. & Order Granting in Part Plaintiffs' Motion for Summary Judgment (D. Utah, Dec. 13, 2013).

## II.

## AMENDMENT 3 DOES NOT DISCRIMINATE ON ACCOUNT OF SEX IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

The district court held that Amendment 3 discriminates on account of sex because it prohibits a person from marrying some of the same sex. Mem. Dec. & Order at 34-35. However, in light of the court's determination that Amendment 3 "fails rational basis review," it did not "analyze why Utah is also unable to satisfy the more rigorous standard" of judicial review that is applicable to sex-based classifications under the Equal Protection Clause. *Id*. The court's holding that Amendment 3 discriminates on the basis of sex does not withstand scrutiny. The classification in the law is not between men and women or between heterosexual and homosexuals, but between opposite-sex couples and same-sex couples.

The fundamental flaw with the district court's holding is that "the marriage laws are facially neutral; they do not single out men or women as a class for disparate treatment, but rather prohibit men and women equally from marrying a person of the same sex." *Baker v. State*, 744 A.2d 864, 880 n. 13 (Vt. 1999). "[T]here is no discrete class subject to differential treatment solely on the basis of sex; each sex is equally prohibited from precisely the same conduct." *Id*. Other state courts have also rejected the claim that "defining marriage as the union of

16

one man and one woman discriminates on the basis of sex."[14]

In the last eight years, the California Supreme Court, the Maryland Court of Appeals, the New York Court of Appeals and the Washington Supreme Court have added their voices to the chorus of state reviewing court decisions holding that laws reserving marriage to opposite-sex couples do not discriminate on account of sex.[15]  And, with the exception of the district court's decision in *Perry v. Schwarzenegger*, 704 F.Supp.2d 921, 996 (N.D. Cal. 2010), federal courts have uniformly rejected sex discrimination challenges to state constitutional amendments reserving marriage to opposite-sex couples, *see Jackson v. Abercrombie*, 884 F.Supp.2d 1065, 1098-99 (D. Haw. 2012), *Sevcik v. Sandoval*, 2012 WL 5989662 (D. Nev. Nov. 26, 2012), Order at 12-15, *appeal pending*, No. 12-17668 (Ninth Circuit), *Bishop v. United States*, No. 04-CV-848-TCK-TLW, (N.D. Okla. Jan. 14, 2014), Op. & Order at 49-50, and to § 3 of the Federal

---

[14] *Id.* (citing *Baker v. Nelson*, 191 N.W.2d 185, 186-87 (Minn. 1971), *appeal dismissed for want of a substantial federal question*, 409 U.S. 910 (1972), and *Singer v Hara*, 522 P.2d 1187, 1191-92 (Wash. Ct. App. 1974)).  *See also Jones v. Hallahan*, 501 S.W.2d 588, 590 (Ky. 1973) (same); *Dean v. District of Columbia*, 653 A.2d 307, 363 n. 2 (D.C. App. 1995) (Op. of Steadman, J.) (same).

[15] *In re Marriage Cases*, 183 P.3d 384, 436-40 (Cal. 2008); *Conaway v. Deane*, 932 A.2d 571, 585-602 (Md. 2007); *Hernandez v. Robles*, 855 N.E.2d 1, 10-11 (N.Y. 2006) (plurality); *id*. at 20 (Graffeo, J., concurring); *Andersen v. King County*, 138 P.3d 963, 988 (Wash. 2006) (plurality); *id*. at 1010 (J.M. Johnson, J., concurring in judgment only).

Defense of Marriage Act, *see Wilson v. Ake*, 354 F. Supp. 2d 1298, 1307-08 (M.D. Fla. 2005); *Smelt v. County of Orange*,  374 F. Supp. 2d 861, 877 (C.D. Cal. 2005); *In re Kandu*, 315 B.R. 123, 143 (Bankr. W.D. Wash. 2005).[16]

In sum, thirteen state reviewing courts,[17] five federal courts and the District of Columbia Court of Appeals have all held that statutes reserving marriage to opposite-sex couples "do[] not subject men to different treatment from women; each is equally prohibited from the same conduct." *Goodridge v. Dep't of Public Health*, 798 N.E.2d 941, 991 (Mass. 2003) (Cordy, J., dissenting) (Justice Cordy was addressing an alternative argument raised by the plaintiffs but not reached by

---

[16] Section 3 of DOMA was subsequently struck down by the Supreme Court on other grounds unrelated to plaintiffs' sex discrimination claim.  *See United States v. Windsor*, 133 S.Ct. 2675 (2013).

[17] In addition to the eight state court decisions previously cited from California (*In re Marriage Cases*), Kentucky (*Jones v. Hallahan*), Maryland (*Conaway v. Deane*), Minnesota (*Baker v. Nelson*), New York (*Hernandez v. Robles*), Vermont (*Baker v. State*) and Washington (*Singer v. Hara*, *Andersen v. King County*) are the decision of the California Court of Appeal in *In re Marriage Cases*, 49 Cal. Rptr. 3d 675, 706 (Cal. Ct. App. 2006), *rev'd on other grounds*, 183 P.3d 384 (Cal. 2008), and four decisions of the New York Supreme Court, Appellate Division, later affirmed by the New York Court of Appeals:  *Hernandez v. Robles*, 805 N.Y.S.2d 354, 370 (N.Y. App. Div. 2005) (Catterson, J., concurring) ("there is no discrimination on account of sex" because "both men and women may marry persons of the opposite sex; neither may marry anyone of the same sex"); *Samuels v. New York State Dep't of Health*, 811 N.Y.S.2d 136, 143 (N.Y. App. Div. 2006) (state marriage law is "facially neutral"); *In re Kane*, 808 N.Y.S.2d 566 (N.Y. App. Div. 2006) (following *Samuels*), *Seymour v. Holcomb*, 811 N.Y.S.2d 134 (N.Y. App. Div. 2006) (same), *aff'd* 855 N.E.2d 1 (N.Y. 2006).

the majority in their opinion invalidating the marriage statute–whether the statute

violated the state equal rights amendment).[18]

The only contrary authority from any reviewing court is *Baehr v. Lewin*, 852

P.2d 44 (Haw. 1993). In *Baehr*, a two-judge plurality expressed the view that a

law reserving marriage to opposite-sex couples constituted sex discrimination

under the state constitution, subject to a heightened standard of judicial review.

*Id*. at 59-63. That view did not command a majority of the court, however, and, in

any event, was later superceded by an amendment to the Hawaii Constitution

recognizing the legislature's power "to reserve marriage to opposite-sex couples."

---

[18] Of the seven States in which marriage laws have been challenged on the basis of a state equal rights amendment, the state equal rights challenge was rejected in three cases (*Conaway v. Deane*, *Griego v. Oliver*, ___P.3d___ (N.M. Dec. 19, 2014), Op. at 19, ¶ 41 ("the distinction between same-gender and opposite-gender couples in the challenged legislation does not result in the unequal treatment of men and women. On the contrary, persons of either gender are treated equally in that they are each permitted to marry only a person of the opposite gender"), *Andersen v. King County*), and was not addressed in three other cases in which the laws were struck down on alternative grounds, *see Kerrigan v. Comm's of Public Health*, 957 A.2d 407, 412 (Conn. 2008), *Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009), and *Goodridge*, 798 N.E.2d at 961 n. 21. The seventh case is *Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993), discussed below in the text.

In the debate over the proposed federal Equal Rights Amendment, which was never ratified by the States, the principal Senate sponsor acknowledged that the amendment would *not* affect the authority of the States to prohibit same-sex marriages so long as the prohibition applied to both men and women. 118 Cong. Rec. 9331 (1972) (statement of Senator Bayh).

HAW. CONST. art I, § 23.  *Baehr v. Lewin* is an outlier in the law.[19]

In its highly abbreviated sex discrimination analysis, the district court acknowledged that Amendment 3 "applies equally to both men and women." Mem. Dec. & Order at 35.  Nevertheless, relying upon *Loving v. Virginia*, 388 U.S. 1 (1967), which struck down state anti-miscegenation statutes, the court held that "the fact of equal application to both men and women does not immunize Utah's Amendment 3 from the heightened burden of justification that the Fourteenth Amendment requires of state laws drawn according to sex." *Id*.  The district court's analogy to *Loving* is unconvincing at several levels.

First, *Loving* dealt with race, not sex.  The two characteristics are not fungible for purposes of constitutional analysis.  For example, although it is clear that public high schools and colleges may *not* field sports teams segregated by *race*, s*ee Louisiana High School Athletic Ass'n v. St. Augustine High School*, 396 F.2d 224 (5th Cir. 1968), they *may* field teams segregated by *sex* (at least where equal opportunities are afforded to males and females on separate teams) without

---

[19] One constitutional scholar has described *Baehr* as one of the ten worst state supreme court decisions of all time, "an affront to both law and language" and a "patent reductio ad absurdum of equal protection jurisprudence," Bernard Schwartz, A Book of Legal Lists 182, 183 (Oxford University Press 1997).

violating the Equal Protection Clause.[20]  Indeed, a school district may go so far as

to provide identical sets of single-gender public schools without running afoul of

the Equal Protection Clause.  *Vorchheimer v. School District of Philadelphia*, 532

F.2d 880, 885-88 (3d Cir. 1976), *aff'd mem. by an equally divided Court*, 430 U.S.

703 (1977).  Although, since *Brown v. Board of Education*, 347 U.S. 483 (1954),

classifications based on race have been subjected to strict scrutiny review without

regard to whether a given classification happens to apply equally to members of

different races, *see McLaughlin v. Florida*, 379 U.S. 184, 191 (1964) (striking

down laws that criminalized interracial cohabitation), "the laws in which the

Supreme Court has found sex-based classifications have all treated men and

women differently."  *Smelt*, 374 F. Supp. 2d at 876.[21]

---

[20] *See Force by Force v. Pierce City R-VI School District*, 570 F. Supp.
1020, 1026 (W.D. Mo. 1983) (noting that "a number of courts have held that the
establishment of separate male/female teams in a sport is a constitutionally
permissible way of dealing with the problem of potential male athletic
dominance"); *O'Connor v. Board of Education of School District No. 23*, 645 F.2d
578, 582 (7th Cir. 1981) (in dissolving a preliminary injunction directing a school
board to permit a junior high school girl to try out for the boys' basketball team,
the Seventh Circuit commented that it was "highly unlikely" that the plaintiff
could demonstrate that the school board's policy of "separate but equal" sports
programs for boys and girls violated either the Equal Protection Clause or the
equal rights provision of the Illinois Constitution).

[21] Citing *United States v. Virginia*, 518 U.S. 515, 519-20 (1996) (law
prevented women from attending military college); *Mississippi University for
Women v. Hogan*, 458 U.S. 718, 719 (1982) (law excluded men from attending
nursing school); *Craig v. Boren*, 429 U.S. 190, 191-92 (1976) (law allowed

Second, anti-miscegenation statutes were intended to keep persons of

*different* races *separate.*  Marriage statutes, on the other hand, are intended to

bring persons of the *opposite* sex *together.*  Statutes that mandated *segregation* of

the *races* with respect to marriage cannot be compared in any relevant sense to

statutes that promote *integration* of the *sexes* in marriage.

> The *Loving* analogy is inapt on purely logical grounds.  The statutes
> struck down in *Loving* . . . prohibited marriages between members of
> *different* races, not between members of the *same* race.  The
> equivalent, in the area of sex, of an anti-miscegenation statute would
> not be a statute prohibiting *same*-sex marriages, but one prohibiting
> *opposite*-sex marriages, an absurdity which no State has ever
> contemplated.  The equivalent, in the area of race, of a statute
> prohibiting same-sex marriage, would be a statute that prohibited
> marriage between members of the *same* race.  Laws banning
> marriages between members of the same race would be
> unconstitutional, not because they would segregate the races and
> perpetuate the notion that blacks are inferior to whites, . . . but
> because there could be no possible rational basis prohibiting members
> of the same race from marrying.  Laws against same-sex marriage, on
> the other hand, are supported by multiple reasons . . . .

*Hernandez v. Robles*, 805 N.Y.S.2d at 370-71 (Catterson, J., concurring) (citation

and internal quotation marks omitted).

Third, unlike the history of the anti-miscegenation statutes struck down in

women to buy low-alcohol beer at a younger age than men); *Frontiero v.
Richardson*, 411 U.S. 677, 678-79 (1973) (law imposed a higher burden on female
servicewomen than on male servicemen to establish dependency of their spouses);
*Reed v. Reed*, 404 U.S. 71, 73 (1971) (law created an automatic preference of men
over women in the administration of estates).

22

*Loving*, which stigmatized blacks as inferior to whites,[22] "there is *no* evidence that laws reserving marriage to opposite-sex couples were enacted with an intent to discriminate against either men or women.  Accordingly, such laws cannot be equated in a facile manner with anti-miscegenation laws."  *Hernandez*, 805 N.Y.S.2d at 370 (Catterson, J., concurring) (emphasis in original).[23]  As in

----

[22] The statutes challenged in *Loving* did not prohibit all interracial marriages, but only marriages between "white persons" and "nonwhite persons." *Loving*, 388 U.S. at 11 & n. 11.  Interracial marriages between "nonwhites" were not banned.  Noting that "Virginia prohibits only interracial marriages involving white persons," the Supreme Court determined that "the racial classifications must stand on their own justification, as measures designed to maintain White Supremacy."  388 U.S. at 11 & n. 11.  That "justification," the Court concluded, was patently inadequate:  "We have consistently denied the constitutionality of measures which restrict the rights of citizens on account of race.  There can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause."  *Id*. at 11-12.

[23] With the exception of the plurality opinion in *Baehr v. Lewin*, 852 P.2d at 59-63 & nn. 23-25, and a passing reference in *Goodridge v. Dep't of Public Health*, 798 N.E.2d at 958 & n. 16, no reviewing court has found the equal protection analysis set forth in *Loving* to be applicable to laws reserving marriage to opposite-sex couples.  *See In re Marriage Cases*, 49 Cal. Rptr. 3d at 707-08; *Conaway v. Deane*, 932 A.2d at 599-604; *Baker v. Nelson*, 191 N.W.2d at 187; *Lewis v. Harris*, 875 A.2d 259, 272 (N.J. Super Ct. App. Div. 2005), *aff'd in part and modified in part*, 908 A.2d 196 (N.J. 2006); *Hernandez*, 855 N.E.2d at 8, *id*. at 19-20 (Graffeo, J., concurring); *Samuels v. New York State Dep't of Health*, 811 N.Y.S.2d at 144; *Baker v. State*, 744 A.2d at 880n. 13, 887; *Andersen v. King County,* 138 P.3d at 989, *id*. at 1001 (J.M. Johnson, J., concurring in judgment only); *Singer v. Hara*, 522 P.2d at 1195-96. The *Loving* analogy has also been rejected by multiple federal district courts.  *See Sevcik v. Sandoval*, Order at 12-15; *Smelt v. County of Orange*, 374 F. Supp.2d at 876-77; *In re Kandu*, 315 B.R. at 141-43.

*Goodridge*, which was decided on other grounds, there is no evidence that Amendment 3 was "motivated by sexism in general or a desire to disadvantage men or women in particular."  798 N.E.2d at 992 (Cordy, J., dissenting).   Nor has either gender been subjected to "any harm, burden, disadvantage, or advantage," *id*., from the adoption of Amendment 3.

Laws that treat men and women equally, and do not subject them to different restrictions or disabilities, cannot be said to deny either men or women the equal protection of the laws.  Amendment 3 treats men and women equally: both men and women may marry someone of the opposite sex; neither may marry someone of the same sex.  Contrary to the understanding of the district court, whose analysis of plaintiffs' sex discrimination argument has been rejected by every other court (other than the plurality opinion of the Hawaii Supreme Court in *Baehr* and the federal district court in *Perry v. Schwarzenegger*), a statute or state constitutional amendment that reserves marriage to opposite-sex couples does not discriminate on the basis of sex.  Accordingly, Amendment 3 does not violate the Equal Protection Clause of the Fourteenth Amendment. The district court's ruling to the contrary is erroneous and must be reversed.[24]

---

[24] With respect to issues not discussed herein, *amicus* generally adopts the brief of the defendants-appellants.

24

## CONCLUSION

For the foregoing reasons, *amicus curiae*, the Family Research Council, respectfully requests that this Honorable Court reverse the judgment of the district court.

Respectfully submitted,


<u>s/Paul Benjamin Linton</u>
Counsel for the *Amicus*
921 Keystone Avenue
Northbrook, Illinois 60062
(847) 291-3848 (tel)
(847) 412-1594 (fax)
PBLCONLAW@AOL.COM

Certificate of Compliance with Rule 32(a)

The undersigned certifies that this brief comports with type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Word Perfect X5 word processing software in 14-point Times New Roman font.

s/Paul Benjamin Linton
Counsel for the *Amicus*

February 6, 2014

Certificate of Service

The undersigned certifies that on the 6th of February, 2014, a true, correct and complete copy of the foregoing Brief *Amicus Curiae* of the Family Research Council in Support of Defendants-Appellants and in Support of Reversal was filed with the Court and served on the following via the Court's ECF system:

David C. Codell
dcodell@nclrights.org

Kathryn Kendell
kkendell@nclrights.org

Shannon Price Minter
Sminter@nclrights.org

James E. Magleby
magleby@mgpclaw.com

Jennifer Fraser Parrish
parrish@mgpclaw.com

Peggy Ann Tomsic
tomsic@mgpclaw.com

*Attorneys for Plaintiffs-Appellees*

John J.  Bursch
jbursch@wnj.com

Phillip S. Lott
phillott@utah.gov

Stanford E. Purser
spurser@utah.gov

Gene C. Schaerr
gschaerr@gmail.com

Monte Neil Stewart
stewart@stm-law.com

Ralph Chamness
rchamness@slco.org

Darcy M. Goddard
dgoddard@slco.org

*Attorneys for Defendants-Appellants*

The undersigned certifies further that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF System.

s/Paul Benjamin Linton
Counsel for the *Amicus*

ECF Certifications

Pursuant to Section II(I) of the Court's CM/ECF User's Manual, the undersigned certifies that:

(1) all required privacy redactions have been made;

(2) hard copies of the foregoing Brief *Amicus Curiae* of the Family Research Council required to be submitted to the clerk's office are exact copies of the brief as filed via ECF; and

(3) the document filed via ECF has been scanned for viruses with the most recent version of AVG Internet Security, 2014, last updated February 6, 2014, and according to the program is free of viruses.

<u>s/Paul Benjamin Linton</u>
Counsel for the *Amicus*